130     359
s90NW   43
130   ¹380

WINSLOW *v.* PUTNAM.

1. HUSBAND AND WIFE—WIFE AS PREFERRED CREDITOR.

A husband who is in good faith a debtor to his wife may prefer her to other creditors, but, if he is insolvent, the transaction should be closely scrutinized.

2. FRAUDULENT CONVEYANCES—CONSIDERATION.

A husband gave to his wife a piece of land, chiefly valuable for pasture, upon which he paid the taxes and made improvements, and used the proceeds, in common with the rest of his farm, for the support of the family. It was claimed that he agreed to pay her rent, which was allowed to accumulate for 20 years, when he conveyed to her 80 acres of his farm, upon which the buildings were situated, in payment of the rent. He also conveyed at the same time to his son 40 acres for alleged wages which had been allowed to accumulate. The transaction left nothing for his creditors. *Held,* upon a review of the whole evidence, that the debts were not *bonc fide,* and that the deeds were made for the purpose of defeating creditors.

Appeal from Ingham; Wisner, J., presiding. Submitted April 8, 1902. (Docket No. 2.) Decided April 22, 1902.

Bill by N. Ira Winslow, administrator of the estate of Harriet M. Williams, deceased, against Daniel Putnam, Elizabeth Putnam, and Ernest Putnam, in aid of execution. From a decree dismissing the bill, complainant appeals. Reversed.

*E. D. Lewis* (*Smith & Hood* and *William T. Webb,* of counsel), for complainant.

*Charles F. Hammond,* for defendants.

MOORE, J. Harriet M. Williams filed her bill in this cause in aid of execution, making Daniel Putnam, Elizabeth Putnam, his wife, and Ernest Putnam, his son, de-

fendants. Since the commencement of this suit Mrs. Williams has died. On the 20th day of May, 1898, she obtained a decree against Daniel Putnam for a deficiency in a mortgage foreclosure suit for $915.80. An execution was levied on an 80-acre parcel formerly owned by Mr. Putnam, now owned by Elizabeth Putnam, and a 40-acre parcel formerly owned by Daniel Putnam, now owned by Ernest Putnam. The circuit judge dismissed the bill. The case is brought here by appeal.

Daniel Putnam, in 1875, resided with his family on a farm of 120 acres, being the lands in question. In October of that year he purchased and paid with his own money for another 40-acre parcel, called the "Bigelow Forty," the conveyance being taken in the name of his wife. In 1882, he bought 40 acres of land of Mrs. Williams for $2,300. He paid $500 down, and gave a mortgage back for $1,800. Himself and family moved upon the Williams 40, upon which there was an orchard and good buildings. At one time the debt against the Williams 40 had been reduced to $1,700, but at the time of the foreclosure it was upwards of $2,400. In October, 1895, he deeded to his wife 80 acres of the old homestead, making her, with the 40 acres of land he gave her in 1875, the owner of 120 acres of land. In February, 1897, he deeded to Ernest 40 acres of land, leaving title in himself to only the Williams 40, from which he had removed a good deal of timber, some of which went into the construction of a house on the old homestead. He also permitted the farm to run down so that it was not worth as much as the debt against it. Some time prior to May, 1898, a new house had been built on the west 40 acres of the old farm, and in May, 1898, Mr. Putnam and his family left the Williams farm, and moved into the new house. Afterwards the mortgage was foreclosed upon the Williams 40, and it is to enforce the collection of the deficiency on that sale this suit is brought.

Mr. Putnam admits in his answer he has no property liable to levy and sale on execution. Mrs. Putnam and

her son both claim to be *bona fide* purchasers of the land conveyed to them. Mrs. Putnam says that, in the spring of 1876, her husband promised to pay her $100 a year rent, less the taxes, for the use of the 40 acres he gave to her the year before; that, not having paid this rent, in the spring of 1877 he agreed to pay the interest upon the rent at 6 per cent. until it was paid, and under that arrangement he used the 40 acres without making any payments to her until 1895, when the rent, with interest thereon, amounted to $2,800, and to satisfy that debt he conveyed to her the 80 acres of land. In his sworn answer Ernest Putnam claimed that, in the purchase of the 40 acres deeded to him, he assumed a mortgage of $230 that was on the land, gave his note for $170, and "that at said time the said Daniel Putnam was indebted to this defendant in the sum of $300 for moneys theretofore loaned him by this defendant, this defendant having earned and received said money from his own labor and services in the neighborhood of Wheatfield, which indebtedness was thereupon canceled, and said sum credited upon the purchase price of said lands." Upon the trial he testified that the $300 was made up as follows: Money loaned to his father in 1894, $100; pressing 20 tons of hay, $30; labor performed in 1893, $27; labor performed in 1895, $61,—which, with the interest figured on those items, he claims amounted to $300 at the time the deed was made. The note he gave was, at the time of the trial, in the possession of his mother.

There is, of course, no longer any question in this State of the right of the husband, who is in good faith a debtor to his wife, to perfér her to other creditors (*Leppig* v. *Bretzel*, 48 Mich. 321 [12 N. W. 199]); but, where a conveyance is made by an insolvent husband to his wife, the transaction, because of the relationship of the parties, should be closely scrutinized. This is not a case where the wife had money of her own which she had permitted her husband to use upon his promise to pay her. Her claim is based upon the use of property bought with his

money and given to her, the proceeds of which were mingled with the other proceeds of the farm, and from which her wants were supplied. No charge was entered upon any book, made against her husband, of this claim for rent. No writing was given by him to her. Nearly all of the debt, if it ever existed, was outlawed. He was apparently a prosperous farmer, and it was because he was supposed to be solvent, and upon his promise to pay, that Mrs. Williams allowed the interest to accumulate.

In *Ball* v. *Phenicie*, 94 Mich. 355 (53 N. W. 1114), Justice MONTGOMERY, speaking for the court, said:

"The theory of the defense was that David L. Phenicie became indebted to his wife for moneys advanced and loaned by her from time to time, and, as is usual in such cases, the aggregate amount claimed to be due is the various sums originally advanced by the wife to the husband, together with interest, without any deduction whatever on any account. Such a course of dealing is so against common experience as to call for a very careful scrutiny of the testimony by the court. It is not the common course for a lady possessed of considerable means to continue in possession of an estate for a long term of years without applying or appropriating one dollar of it to any purpose whatever; and, while it is the duty of the court to protect the property rights of married women, even as against the creditors of the husband, it is no injustice to the parties in a case like the present to apply, in construing the testimony, such fair presumptions as the common experience of mankind suggests."

See, also, *Case Manfg. Co.* v. *Perkins*, 106 Mich. 349 (64 N. W. 201).

If the claim of the two defendants is to be believed, we find a husband donating to his wife a piece of land, chiefly valuable for the pasture, upon which he pays taxes and makes the improvements, the proceeds of which he uses, in common with the proceeds of the rest of the farm, for the support of the son and wife; also immediately making an arrangement to pay what is shown by the weight of testimony to be a very high rent. The rent is allowed to accumulate, though there is no reason shown why the

husband might not have paid it, until, with interest, it equals in amount the value of the 80 acres upon which are the buildings. At the same time this rent is allowed to accumulate the husband and father did not pay the son for services rendered by him upon the farm, and we find the son taking over the title to 40 acres of the farm. As the result of the transaction the title to 160 acres of land, bought and paid for by the husband, is no longer in him, but is still in the family, while only $100 in money has changed hands, while nothing is left for the creditors of the husband. Without attempting to recite the testimony and to further analyze it, we must content ourselves with saying we are fully impressed with the conviction that the conveyances, instead of being made to satisfy existing *bona fide* debts, were made for the express purpose of defeating creditors. The relief prayed for in the bill of complaint should have been granted.

The decree is reversed, and one will be entered here in accordance with this opinion, with costs of both courts.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.